

FILED by _____ D.C.
ELECTRONIC
MAR 20, 2007
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20168-CR-SEITZ/MCALILEY

18 U.S.C. § 371

UNITED STATES OF AMERICA

vs.

WALTER HENDERSON,

        Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At various times relevant to this Information:

1. American Merchant Technologies, Inc. ("AMT"), was a Florida corporation. AMT's principal place of business was in Miami-Dade County at 560 NE 165th Street Road, Second Floor, Miami, Florida.

2. AMT engaged in the sale of business opportunities to the public. AMT purported to sell automated teller machines ("ATMs"), public access internet terminals ("PAIT"), and point of sale ("POS") terminals, along with assistance in establishing, maintaining and operating an ATM, PAIT, or POS business.

3. AMT used various types of sales representatives, including "fronters" and "closers." A "fronter" spoke to potential purchasers when the potential purchaser initially contacted AMT in response to an advertisement. A "closer" subsequently spoke to potential purchasers to follow up

on the initial conversation with the fronter. AMT used references who falsely held themselves out as successful AMT business opportunity purchasers.

4.      Defendant **WALTER HENDERSON** was the Project Manager and a closer for AMT.

## COUNT 1
## Conspiracy to Commit Wire Fraud
## (18 U.S.C. § 371)

1.      Paragraphs 1 through 4 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around April 1, 2004 through in or around December 2004, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### WALTER HENDERSON

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the United States Attorney, to commit certain offenses against the United States, that is to knowingly and with intent to defraud devise, and intend to devise, a scheme and artifice to defraud and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted certain wire communications in interstate commerce, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for **WALTER HENDERSON** and his co-conspirators to unlawfully enrich themselves by obtaining money from potential business

2

opportunity purchasers by making materially false representations, and omitting to state and concealing material facts concerning, among other things, expected profits, the service provided to purchasers, and the authenticity of AMT references.

### MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **WALTER HENDERSON** and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. AMT advertised its business opportunity through Internet advertising.

5. A potential purchaser contacting AMT in response to an advertisement initially spoke to an AMT "fronter." Following a brief overview of the business opportunity and the gathering of some information by the fronter, the prospective purchaser was then transferred to an AMT "closer." An AMT business opportunity cost $12,990 for three cashless/scrip ATMs; $14,995 for three POS ATMs, and $17,995 for one PAIT.

6. As Project Manager for AMT, **WALTER HENDERSON** managed the fronters and closers employed by AMT.

7. According to a script provided to AMT fronters, AMT fronters informed potential purchasers that AMT had a "limited number of distributorships available" in the potential purchaser's area. The fronter informed the potential purchaser that AMT had "developed a full service, turnkey business opportunity with both public access internet terminals and ATM's. We include everything you need to start up your business and be successful. That means we secure for you the best locations." Potential purchasers were then transferred to another AMT salesperson known to **WALTER HENDERSON** and his co-conspirators as a "closer."

3

8. The closer generally identified himself to potential purchasers as a Territory Director who was responsible for setting up distributors for a particular area. In reality, a closer did not specialize in any particular area of the country and took calls from any place in the United States. The closer and potential purchaser scheduled an appointment to speak at a time after the potential purchaser received the AMT brochure.

9. The closer generally provided potential purchasers with names and phone numbers of some references, whom the closer described as distributors or individuals who owned an AMT business opportunity.

10. Using Federal Express, AMT sent potential purchasers professional-looking glossy brochures. The AMT brochures represented that, in addition to the terminals themselves, AMT "is looking for business partners - not employees. We profit from your sales just as you do. In short, your success is our success! That's why we provide you with ongoing customer service and that's what gives you the investor the best chance to make the most money. AMT terminals come complete with a series of support tools and services[.]"

11. After the potential purchaser received the brochure by Federal Express, the AMT closer made an extended sales pitch to the potential purchaser. With respect to PAITs, a closers' script indicated that the closer informed potential purchasers that "once you make the commitment to become a distributor, you will immediately be assigned a personal locator that is intimately familiar with your area. He will call you within 24 hours of you coming abroad with us to begin the process. Now, when he sends you to a location, you'll know that it has been pre-screened, pre-qualified and pre-sold, and it's [sic] owners are waiting for your terminal." With respect to the

4

ATMs, a closers' script indicated that the closer informed potential purchasers that a locating company would locate the potential purchaser's machines in "high-traffic retail locations."

12.     **WALTER HENDERSON** contributed to drafting a sales script for the PAIT business opportunity. **WALTER HENDERSON** provided sales scripts to be used by the AMT closers.

13.     To fraudulently induce potential purchasers to purchase AMT business opportunities, AMT closers made materially false statements to potential purchasers, including that AMT was a profitable business opportunity, and that a locating company would secure high-traffic locations for AMT distributors to place their terminals.

14.     As **WALTER HENDERSON** knew, to fraudulently induce potential purchasers to purchase AMT business opportunities, AMT closers provided potential purchasers with the names of individuals who were purportedly successful AMT business opportunity owners, when in fact, such references were not successful AMT business opportunity owners, but were merely shills, that is, individuals paid by AMT to fraudulently induce potential purchasers to buy an AMT business opportunity. During the time period AMT was in business, these phony references spoke to a number of potential purchasers of an AMT business opportunity.

## OVERT ACT

In furtherance of the conspiracy and to achieve the object and purpose thereof, at least one of the co-conspirators committed, or caused to be committed, in the Southern District of Florida, and elsewhere, the following overt act, among others:

1.      In or about July 2004, in furtherance of the above-stated scheme to defraud, **WALTER HENDERSON** engaged in an interstate telephone call from within the Southern District

of Florida to a potential purchaser in Nekoosa, Wisconsin, to solicit an investment in the AMT business opportunity.

All in violation of Title 18, United States Code, Section 371.

_____
R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY


_____
JEFFREY STEGER
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

WALTER HENDERSON,

        Defendant.
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

  X  Miami   ___  Key West
  ___ FTL   ___  WPB   ___ FTP

New Defendant(s)    Yes ___   No ___
Number of New Defendants   ___
Total number of counts   ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)   No
   List language and/or dialect   _____

4. This case will take   0   days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)         (Check only one)

   | | | | | |
   |---|---|---|---|---|
   | I | 0 to 5 days | X | Petty | ___ |
   | II | 6 to 10 days | ___ | Minor | ___ |
   | III | 11 to 20 days | ___ | Misdem. | ___ |
   | IV | 21 to 60 days | ___ | Felony | X |
   | V | 61 days and over | | | |

6. Has this case been previously filed in this District Court? (Yes or No)   No
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003? ___ Yes   X  No

8. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? ___ Yes   X  No
   If yes, was it pending in the Central Region? ___ Yes ___ No

9. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes   X  No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003? ___ Yes   X  No

                                            _____
                                            Jeffrey Steger
                                            DOJ Trial Attorney
                                            Court No. A5500681

*Penalty Sheet(s) attached                                           REV.1/14/04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** __Walter Henderson__     **Case No:** _____

Count #: 1    -    18 U.S.C. § 371

　　　　　　　　Conspiracy to commit wire fraud

*__Max Penalty__:     5 years' imprisonment

Count #:

*__Max Penalty:__

Count #:

*__Max Penalty:__

Count #:

*__Max Penalty:__

*__Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.__